UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY ANN VINCENT,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

_____/

Case No. 2:17-cv-13302
District Judge Nancy G. Edmunds
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 11), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 13) and AFFIRM THE COMMISSIONER'S DECISION

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 13),

and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

    Plaintiff, Tammy Ann Vincent, brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for disability insurance (DI) and

supplemental security income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 11), the Commissioner's cross-motion for summary judgment (DE 13), and the administrative record (DE 8).

### A. Background and Administrative History

Plaintiff alleges her disability began on October 11, 2011, at the age of 42. (R. at 141, 148.) In her October 28, 2014 disability report, she lists several conditions (spinal stenosis, arthritis, and morbid obesity) that limit her ability to work. (R. at 180.) Her applications were denied on February 25, 2015. (R. at 54-87.)

On April 23, 2015, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 92-95.) On May 5, 2016, ALJ Richard Sasena held a hearing, at which Plaintiff and a vocational expert (VE), Annette Holder, testified. (R. at 31-53.) On this same day, Plaintiff requested a closed period of disability, beginning on April 1, 2014 and ending on November 1, 2015. (R. at 175.) ALJ Sasena issued an opinion on July 28, 2016, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 9-23.)

On September 27, 2016, Plaintiff submitted a request for review of the hearing decision/order. (R. at 135-139.) However, on September 15, 2017, the Appeals Council denied Plaintiff's request for review, noting, *inter alia*, that the submitted 7 pages of treatment records from Great Lakes Pain Management did not

"show a reasonable probability that it would change the outcome of the decision." (R. at 1-6, 24-30.)[1] Thus, ALJ Sasena's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on October 10, 2017. (DE 1.)

## B. Plaintiff's Medical History

The administrative record contains approximately 116 pages of medical records, which were available to the ALJ at the time of his July 28, 2016 decision. (R. at 247-362 [Exhibits 1F – 9F].) In addition, Plaintiff submitted 7 pages of material, as previously described, that were available to the Appeals Council. (R. at 2, 24-30.) These materials be discussed in detail, as necessary, below.

## C. The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the requested closed period of disability from April 1, 2014 to November 1, 2015. (R. at 14.)[2] At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: obesity, trochanteric bursitis,

---

[1] Among these was a July 18, 2014 electromyographic examination of the lower extremities (R. at 28), which occurred during the closed period of disability.

[2] Although the ALJ's bold-faced Step I conclusion uses the end-date of November 1, *2014* (R. at 14), it is clear the ALJ was referring to November 1, *2015* (R. at 12, 16, 175).

spondyloarthropathy, migraine headaches, and history of sleep apnea. (*Id*.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 15.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff had the RFC:

> . . . to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) [*i.e., exertional limitations*] with the following exceptions: she must avoid concentrated exposure to unprotected heights, vibrating tools, moving machinery, extreme heat, extreme cold, humidity, dusts, fumes, and gases [*i.e., environmental limitations*]; she cannot use ladders; she can occasionally climb stairs, balance, stoop, or crawl [*i.e., postural limitations*]; and she must be allowed to change position every 15 minutes.

(*Id*. at 15-17.) At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id*. at 17.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id*. at 18-19.) The ALJ therefore concluded that Plaintiff had not been

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

under a disability, as defined in the Social Security Act, from April 1, 2014, through the date of the decision. (*Id.* at 19.)

### D.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**E.    Analysis**

Plaintiff argues that the ALJ's RFC assessment does not comply with SSR 96-8p or 20 C.F.R. §§ 404.1527, 416.927. (*See* DE 11 at 10-15.) The Commissioner argues that the ALJ "properly determined Plaintiff's RFC[,]" and "properly evaluated the medical evidence." (*See* DE 13 at 5-10.)

**1.    Assessing RFC and SSR 96-8p**

Social Security Ruling 96-8p provides guidance for assessing RFC in initial claims. It requires a narrative discussion:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8P (S.S.A. July 2, 1996) (internal footnote omitted).

### a.   **Postural limitations**

Plaintiff's argument that the ALJ's RFC assessment is "simply conclusory" and "does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p[,]" (DE 11 at 10), focuses on the assessed postural limitations. Postural tasks include "climbing, balancing, stooping, kneeling, crouching and crawling[.]" *McClain v. Comm'r of Soc. Sec.*, 114 F. App'x 724, 726 (6th Cir. 2004). As noted above, the ALJ determined that Plaintiff *could not* use ladders but *could occasionally* climb stairs, balance, stoop, or crawl. (R. at 15.)

During the May 5, 2014 physical examination, Dr. Gupta found Plaintiff's upper and lower extremities to be "normal in power." (R. at 276.) Dr. Gupta

found, *inter alia*: (i) limited range of motion in the lumbar spine and right hip, (ii) "evidence of a limping gait, limping on her right leg[,]" and (iii) "no need for a walking aid." (R. at 276-277.) Dr. Gupta also seems to have concluded that Plaintiff had increased reflexes in the right lower extremity. (R. at 278.) During the same examination, Dr. Gupta found: **(i)** normal range of motion in the cervical spine, shoulders and elbows; **(ii)** normal left hip flexion; and **(iii)** normal range of movement in the ankles and wrists. (R. at 276-277.) Ultimately, as to postural limitations, Dr. Gupta's medical source statement noted that Plaintiff "has limitation of movement as far as bending and stooping are concerned[,]" she "cannot stoop, kneel, crouch or crawl[,]" and she "should not be climbing more than 5 steps at a time." (R. at 277.)

The ALJ made express note of many of Dr. Gupta's findings and conclusions, either when reviewing the relevant medical evidence or within the ALJ's review of the opinion evidence. (R. at 16-17.) Moreover, within what may fairly be referred to as a credibility discussion, the ALJ acknowledged Daniel Mekasha, M.D.'s April 2014 conclusions that Plaintiff was "morbidly obese" and her seated straight leg raise (SLR) was positive on the right (*see* R. at 321, 352, 355), but the ALJ also noted that "an x-ray study of her lumbar spine was normal[,]" (*see* R. at 283), and that "subsequent examinations indicated that [SLR] testing was negative[,]" (*see, e.g.*, R. at 350, 347, 345, 343, 341, 339). (R. at 17.)

The Court notes that the latest of these occurred on March 17, 2015. Thus, even if the ALJ had noted Dr. Gupta's May 5, 2014 assessment that Plaintiff's "[s]traight leg raising, supine, was 90 degrees on the left and 80 degrees on the right[,]" (R. at 276-277, 279), and even if these measurements were construed as "positive" SLR tests, there are later, negative SLR tests in the record. Plaintiff's claim that "[t]here is no medical evidence in the file . . . that would refute Dr. Gupta's opinion[,]" (DE 11 at 12), is simply inaccurate.

### b. Exertional limitations

Plaintiff's argument that the ALJ's RFC finding "failed to include the required 'function-by-function' assessment[,]" (DE 11 at 12), focuses on the assessed exertional limitations. An RFC's exertional limitations include lifting, carrying, standing, walking, sitting, pushing and pulling. *See*, *e.g.*, 20 C.F.R. §§ 404.1569a(b), 416.969a(b). As noted above, the ALJ here determined that Plaintiff was exertionally limited to sedentary work, with the additional limitation that "she must be allowed to change position every 15 minutes." (R. at 15.)

By way of background, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a *function-by-function basis*, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium,

9

heavy, and very heavy." SSR 96-8P (S.S.A. July 2, 1996) (emphasis added). As the Sixth Circuit has counseled, "SSR 96–8p requires an ALJ to individually assess the exertional (lifting, carrying, standing, walking, sitting, pushing, and pulling), and non-exertional (manipulative, postural, visual, communicative, and mental functions) capacities of the claimant in determining a claimant's RFC." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).

However, "[a]lthough SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado*, 30 F. App'x at 547. "[T]he Court has repeatedly held that an ALJ need not address every possible work-related function." *Sanders v. Comm'r of Soc. Sec.*, No. 16-CV-13952, 2018 WL 2181096, at *5 (E.D. Mich. Jan. 23, 2018) (Majzoub, M.J.), *report and recommendation adopted*, No. 16-13952, 2018 WL 1531595 (E.D. Mich. Mar. 29, 2018) (Battani, J.). *See also Jackson v. Comm'r of Soc. Sec.*, No. 16-CV-13032, 2017 WL 4985644, at *6 (E.D. Mich. July 26, 2017) (Majzoub, M.J.) (same), *report and recommendation adopted*, No. 16-13032, 2017 WL 4296609 (E.D. Mich. Sept. 28, 2017) (Borman, J.). "The ALJ need not decide or discuss uncontested issues, 'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies

in the record.'" *Delgado*, 30 F. App'x at 548 (quoting *Bencivengo v. Comm'r of Soc. Sec.*, No. 00-1995, 251 F.3d 153 (table) (3d Cir. Dec. 19, 2000)). Still, "an 'ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.'" *Lowery v. Comm'r, Soc. Sec. Admin.*, 55 F. App'x 333, 339 (6th Cir. 2003) (quoting *Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995) (citing *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994))).

    The ALJ did so here. Plaintiff avers that "nowhere . . . does the ALJ outline the medical evidence that supports each one of his conclusions concerning Plaintiff's ability to sit, stand, walk, lift, carry, push and pull." (DE 11 at 14.) To the contrary, the ALJ's review of the "relevant medical evidence" expressly notes Dr. Gupta's opinions that: (1) "[t]here is no need for a walking aid[;]" (2) Plaintiff has a "maximum standing and walking capacity" of 30 to 60 minutes; and, (3) Plaintiff can "lift[] . . . 10-15 pounds, occasionally." (R. at 15-16.) Then, in assigning "some weight" to Dr. Gupta's opinion, the ALJ noted that "the record supports the existence of some restrictions with standing, walking, lifting . . . ." (R. at 17.) Perhaps most notably, the ALJ then assessed Plaintiff's exertional RFC as *sedentary*, the *most restrictive* of the job classification categories. *See* 20 C.F.R. §§ 404.1567, 416.927.

Plaintiff seems to argue that Dr. Gupta's consultative examination is the only "medical opinion concerning her ability to perform" the exertional functions. (DE 11 at 14, R. at 277.) Perhaps that is the case. Dr. Gupta's lifting conclusion – "maximum lifting is 10-15 pounds, occasionally" – is honored by the definition of sedentary work:

> Sedentary work involves *lifting no more than 10 pounds at a time* and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if *walking and standing are required occasionally* and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.927(a) (emphases added). So is the "maximum standing and walking capacity" of 30-60 minutes.[4] In addition, the standing and walking conclusions are addressed by the additional requirement that Plaintiff "must be allowed to change position every 15 minutes." (R. at 15.) Thus, to the extent Dr. Gupta's medical source statement (*i.e.*, conclusion) addressed the specific exertional activities of standing, walking and lifting, the ALJ consistently adopted a sedentary RFC. Nor has Plaintiff shown that a sedentary RFC with the

---

[4] "Occasionally is defined as from very little up to one-third of an eight-hour day." *Burke v. Sec'y of Health & Human Servs.*, No. 88-5651, 1989 WL 21708, *4 (6th Cir. Mar. 14, 1989). *See also Urban v. Chater*, 97-3885, 1999 WL 97251, *5 n.4 (6th Cir. Feb. 8, 1999).

12

additional changing position condition fails to address any limitations Plaintiff might have with carrying, sitting, pushing and/or pulling.

### c.     Summation

Plaintiff attempts to attack the ALJ's RFC determination that Plaintiff is exertionally limited to sedentary work with the additional provision of changing position every 15 minutes and has various postural limitations. However, as shown above, Plaintiff has not established a more restrictive RFC than that found by the tribunal – a burden that is hers to meet. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). *Berry v. Comm'r of Soc. Sec.*, No. 16-10548, 2016 WL 7664225, at *11 (E.D. Mich. Dec. 8, 2016) (Morris, M.J.) ("Berry gives no indication what additional restrictions might be necessary to accommodate his conditions, but merely mentions the possibility that the ALJ *could have* included more restrictive limitations in his RFC assessment.") (emphasis in original), *report and recommendation adopted*, No. 16-10548, 2017 WL 67458 (E.D. Mich. Jan. 6, 2017) (Rosen, J.).

### 2.     Treatment of opinion evidence and 20 C.F.R. §§ 404.1527, 416.927

Plaintiff argues that the ALJ did not comply with the opinion evidence regulation, because he did not "accord *adequate* weight to the opinion of the plaintiff's treating physician." (DE 11 at 14-15 (emphasis added).) This

13

regulation provides that, regardless of the source, the SSA "will evaluate every medical opinion" that it receives. 20 C.F.R. §§ 404.1527(c), 416.927(c). Furthermore, unless the SSA gives controlling weight to a treating source's medical opinion, the SSA will consider the examining relationship, the treatment relationship, supportability, consistency, specialization and other factors "in deciding the weight we give to any medical opinion." *Id*.

Unfortunately, Plaintiff's statement of error does not identify the treating physician to whom she refers. (*See* DE 11 at 14-15.) As the Commissioner correctly observes, "Plaintiff simply cites to various medical records she feels support her case[.]" (DE 13 at 9.) Based on these citations, the Court presumes that Plaintiff is referring to Mark Wein, D.O. and Daniel Mekasha, M.D. (*See* DE 11 at 15.)

Even so, Plaintiff's statement of error is unavailing. The ALJ's review of the "relevant medical evidence" included citations to various records from:

**(a)** Dr. Wein, Plaintiff's "current primary care physician." The Court notes that Dr. Wein saw Plaintiff from April 2014 through December 2015. (R. at 285-300 [Ex. 4F], R. at 304-305 [Ex. 5F], R. at 327-330 [Ex. 7F], R. at 357-362 [Ex. 9F].)

**(b)** Dr. Mekasha, a "pain management specialist." The Court notes that Dr. Mekasha saw Plaintiff on at least nine occasions during 2014 and 2015. (R. at 314-321 [Ex. 6F], R. at 334-355 [Ex. 8F].)

**(c)** Shalini Gupta, M.D., who conducted "[a] consultative medical examination . . . in May 2014[.]" (R. at 275-281 [Ex. 2F].)

(R. at 15-17.) Then, with respect to "the opinion evidence," the ALJ noted:

> . . . the undersigned gives *some weight* to Dr. Gupta's opinion to the extent that the record *supports* the existence of some restrictions with standing walking, lifting, bending, stooping, kneeling, crouching, crawling, and climbing stairs (2F [R. at 274-281]). However, Dr. Gupta's assessment as to the amount of restriction is *not fully supported* by even her own examination findings as there is *no basis* for a complete inability to stoop or crouch and she retained normal power in all of her extremities (2F [R. at 274-281]).

(R. at 17 (emphases added).) In other words, the ALJ identified each of these physicians by his or her specific role, and, as such, considered the examining, treatment and/or specialization factors. 20 C.F.R. §§ 404.1527(c)(1),(2),(5), 416.927(c)(1),(2),(5).

Moreover, as noted above, Dr. Gupta's own physical examination revealed that Plaintiff's upper and lower extremities were "normal in power." (R. at 276.) Thus, the ALJ's consistent statement is not "untrue," as Plaintiff implies (DE 11 at 12), and it is clear that the ALJ discounted Dr. Gupta's postural limitation opinion on the basis of the supportability and/or consistency factors. 20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4). As for Drs. Wein and/or Mekasha, Plaintiff's opinion evidence argument appears to claim that their records document "severe pain" and Plaintiff's need for increased and renewed "pain medications," and "support her physical limitations and her need to lie down . . . ." (*Id.*) The ALJ expressly discussed several of Dr. Wein's and Dr. Mekasha's records. (*See* R. at 15-17.) Still, notwithstanding Plaintiff's citations to their records that address,

15

*e.g.*, "medications for migraine headaches" or "severe headaches" and "severe back pain" that required "narcotics and regular injections[,]" (DE 11 at 15), Plaintiff has not shown how the ALJ's consideration of Drs. Wein and Mekasha's records – or, for that matter, Dr. Gupta's CE report - was errant.

Perhaps more fatal to Plaintiff's opinion evidence statement of error is her assertion that the ALJ did not "*accurately* weigh the *intensity* of her treating medical records . . .[,]" (*id.* (emphases added)). This reads more like a credibility challenge under 20 C.F.R. §§ 404.1529(a),(c), 416.929(a),(c), which addresses "evaluating the intensity and persistence of your symptoms," as opposed to an argument that the ALJ's consideration of these pieces of evidence was *inaccurate*. In Plaintiff's case, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 17.) While Plaintiff's first statement of error quotes the ALJ's statement that "[w]eighing all relevant factors, the undersigned concludes that the claimant's subjective complaints do not warrant any additional limitations beyond those established in the aforementioned [RFC][,]" (*see* DE 11 at 11, R. at 17), Plaintiff's brief does not otherwise allude to credibility *or* 20 C.F.R. §§ 404.1529, 416.929 *or* SSR 96-7p (July 2, 1996) *or* SSR 16-3p. And there is no developed exploration of the ALJ's credibility analysis, which remains unchallenged. Moreover, Plaintiff's

16

opinion evidence statement of error also seems like a request to *re-weigh* the evidence at some level (*e.g.*, the ALJ did not "*accurately* weigh the *intensity*" and Plaintiff argues that the ALJ did not comply with the opinion evidence regulation, because he did not "accord *adequate* weight to the opinion of the Plaintiff's treating physician[,]" (DE 11 at 14-15 (emphases added).) The Court cannot reweigh the evidence on appeal. *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982*) (citing Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)); *see also Haun v. Comm'r of Soc. Sec.,* 107 F. App'x 462, 465 (6th Cir. 2004). Either way, Plaintiff has not convinced the Court that the ALJ's treatment of the opinion evidence was improper under 20 C.F.R. §§ 404.1527, 416.927 − a burden that is hers to meet. *Walters*, 127 F.3d at 529.

### F. Conclusion

Plaintiff has the burden of proof on her statements of error, and she has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 13), and **AFFIRM** the Commissioner of Social Security's decision.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  January 18, 2019              s/*Anthony P. Patti*
                                      Anthony P. Patti
                                      UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on January 18, 2019, electronically and/or by U.S. Mail.

                                        s/Michael Williams
                                        Case Manager for the
                                        Honorable Anthony P. Patti